<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD JEFFREY MONTGOMERY, | : | |
| | : | Civil Action No. 13-5382(SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| APARATIS DIST. COMPANY, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

    EDWARD JEFFREY MONTGOMERY, Plaintiff <u>pro se</u>
    #455483 SBI# 599269-A
    Essex County Correctional Facility
    354 Doremus Avenue
    Newark, New Jersey 07105

**WIGENTON**, District Judge

    Plaintiff, Edward Jeffrey Montgomery, a state inmate confined at the Essex County Correctional Facility in Newark, New Jersey, at the time he filed this Complaint, seeks to bring this action *in forma pauperis*. This action was administratively terminated by Order entered on September 18, 2013, because Plaintiff's application to proceed *in forma pauperis* ("IFP") was deficient. The Order allowed Plaintiff the opportunity to re-open his case if he submitted a complete IFP application with his six-month prison account statement, as required under 28 U.S.C. § 1915(a)(2), or the requisite filing fee. (ECF No. 3.) On October 2, 2013, Plaintiff submitted a complete IFP application. (ECF No. 5.) Therefore, based on his affidavit of

indigence, the Court will grant Plaintiff's application to proceed pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to re-open this action and file the Complaint accordingly.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that Plaintiff's denial of medical care claim shall proceed at this time against Defendant Dr. Annicette, but the Complaint shall be dismissed, in its entirety, as against the remaining Defendants.

In addition, Plaintiff has filed a motion for appointment of counsel (ECF No. 2), and a motion for emergent relief, seeking to compel Defendant Dr. Annicette to provide the long prescribed MRI procedure. (ECF Nos. 7, 7-1.) The Court will deny without prejudice the motion for appointment of counsel at this time. However, an Order to Show Cause will be issued directing Defendant to respond in writing, in an expedited manner, as to whether Plaintiff's request for emergency relief should not be granted.

## I. BACKGROUND

Plaintiff, Edward Jeffrey Montgomery ("Plaintiff"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following Defendants: Alberto Ortiz, Director of the Essex County Correctional Facility ("ECCF"); Roy Hendricks, Warden at ECCF; Faunce, Director of ECCF; Captain Christopherson, Chief of Security at ECCF; Lieutenant John Doe, 1st Shift Commander at ECCF; Sergeant Lynn, 1st Shift Housing Supervisor at ECCF; Sergeant Crawford, 2nd Shift Housing Supervisor at ECCF; Dr. Annicette, Medical Director at ECCF; and the Aparatis Distributing Company (John Doe). (ECF No. 1, Complaint, Caption, ¶¶ 4b-d, p. 4.) The

following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff alleges that he was admitted to the ECCF on March 19, 2013, as a pretrial detainee, and was assigned to the medical unit located at 2B1. Plaintiff alleges that most prisoners in the medical unit require medical supervision and often are physically handicapped in need of walking canes, crutches, etc. (*Id*. at 5, Statement of Claims, ¶¶ 1-5.) Plaintiff further alleges that defective water dispensers were purchased from Defendant Aparatis Distributing Company (John Doe) and were placed in the medical unit that was not equipped with a drainage system that could "hold" excess water flow from the dispensers. Consequently, daily flooding occurred in the medical unit, creating a hazard or dangerous condition. (*Id*. at ¶¶ 6, 7.) Plaintiff slipped and fell on water in the medical unit and sustained a pinched nerve injury sometime in March 2013. (*Id*. at ¶ 8.)

Plaintiff alleges that Defendants "intentionally" failed to install a proper drainage system in the medical unit or remove the defective water dispensers "in a timely manner once the flooding problem became known to" them, thus demonstrating "callous indifference to the safety of plaintiff" and other inmates at ECCF housed in the medical unit. (*Id*. at ¶ 9.)

Plaintiff also appears to allege that Defendant Dr. Annicette denied him medical treatment in violation of his Fourteenth Amendment right to due process by refusing to refer Plaintiff for a follow-up MRI procedure recommended by orthopedic specialists. (*Id*., ¶¶10-12.) Plaintiff attaches to his Complaint numerous medical slips and letters he wrote and received regarding his pinched nerve injury and requests for the recommended MRI procedure. (*Id*., Exhibits 1 through 17-Q.) In particular, Plaintiff alleges that he was referred by Dr. O'Connor, a licensed orthopedic specialist associated with CFG Health System, LLC (a private medical

company contracted by ECCF to provide medical care for inmates), for an MRI and bone scan during June 2013.  (*Id*., Ex. 17-P at ¶¶ 20-22.)  On July 20, 2013, Plaintiff was examined by Dr. Melendez pursuant to a sick call request for continuing pain from his pinched nerve, and Dr. Melendez increased Plaintiff's pain medication .  On August 9, 2013, Dr. Kaiser also examined Plaintiff and allegedly informed Plaintiff that his pinched nerve was worse.  Plaintiff alleges that Dr. Kaiser also told him that Dr. Annicette was delaying the recommended MRI due to the "financial cost of the procedure."  (Id., Ex. 17-P at ¶¶ 24-25.)

On November 14, 2013, Plaintiff filed a motion for emergency relief under Fed.R.Civ.P. 65.1.  (ECF No. 7.)  In his supporting Certification, Plaintiff alleges that on September 28, 2013, he experienced substantial numbness down his legs upon exiting his cell that caused Plaintiff to fall and injure himself.  Plaintiff was taken to the East Orange General Hospital where he received emergency medical treatment for the injuries he sustained in his September 28, 2013 fall.  Namely, Plaintiff's right wrist was broken and placed in a cast, and Plaintiff received stitches to close a large cut over his right eye.  On September 30, 2013, Dr. O'Connor examined Plaintiff at ECCF.  Plaintiff alleges that Dr. O'Connor informed Plaintiff that Plaintiff would continue to have complications from his pinched nerve injury.  Plaintiff further alleges that Dr. O'Connor again recommended that an MRI be scheduled as follow-up treatment.  (ECF No. 7-1, Certification at ¶¶ 7, 8, 10, 11.)

Plaintiff reiterates that he has been "extensively examined by two (2) outside orthopedic specialist's [sic], including the jail's own medical doctors," who have referred Plaintiff for MRI evaluations.  (*Id*. at ¶ 13.)  Plaintiff alleges that he is HIV positive and poses a threat to himself and others should he suffer another fall resulting in excessive bleeding.  (*Id*.)  Plaintiff further alleges that, on September 30, 2013, Dr. O'Connor told Plaintiff that Defendant Dr. Annicette

4

"has refused to spend the approximately '$ 1000.00' to pay for such a procedure, and that plaintiff will have to waite [sic] until either he makes bail" or becomes a convicted State prisoner. (*Id*. at ¶ 15.)

Plaintiff alleges that he has filed administrative grievances regarding the refusal to schedule a recommended MRI to Defendants Warden Hendricks, Director Ortiz and Dr. Annicette, but these Defendants have ignored Plaintiff's requests. He also has filed his administrative grievances with ECCF's ombudsman. (*Id*., ¶¶ 17, 18.) Plaintiff argues that he faces imminent danger of further injury if he does not receive the recommended MRI. (*Id*. at ¶ 21.)

Plaintiff seeks $100,000.00 in compensatory damages and an additional $100,000.00 in punitive damages from Defendants. (ECF No. 1, Compl. at 6.) In his motion for emergency relief, Plaintiff seeks injunctive relief, namely, that Defendants be compelled to provide the prescribed medical treatment. (ECF No. 7-1 at ¶ 22.) Plaintiff also seeks appointment of counsel in this matter pursuant to *Montgomery v. Pinchak*, 294 F.3d 492 (3d Cir. 2002).

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

Per the Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. Specifically, the PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). Accordingly, because Plaintiff is a prisoner

proceeding *in forma pauperis* in this matter, this action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

"The legal standard for dismissing a complaint for failure to state a claim under [the PLRA] is the same as that for dismissing a complaint pursuant to a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Aruanno v. Green*, 527 F. App'x 145, 147 (3d Cir. 2013) (discussing 28 U.S.C. § 1915(e)(2)(B)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (28 U.S.C. § 1915A(b)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, to prevent summary dismissal, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Moreover, while pro se pleadings are liberally construed, *Higgs v. Atty. Gen.*, 655 F.3d 333, 339 (3d Cir. 2011), "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). Nonetheless, courts must be cognizant that the *Iqbal* standard "is not akin to a probability requirement." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

### III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

> deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). *See also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV. DISCUSSION

A. Slip and Fall Claim

Plaintiff first asserts that his slip and fall accident occurred in March 2013, because all Defendants, except Dr. Annicette, "knowingly and intentionally with recklessness [sic] disregard [have] subject[ed] plaintiff to cruel and unusual punishment in violation of his Due Process of the Fourteenth Amendment to the United States Constitution." (ECF No. 1, Compl. at ¶¶ 4b-d and p. 4.) Specifically, Plaintiff alleges that Defendants "knowingly" placed a "defective" water dispenser in the ECCF medical unit without a proper floor drainage system for water overflow, and then failed to remove the water dispenser in a timely fashion after the "flooding problem" became known to Defendants. (Id., p.5 at ¶¶ 8, 9.) Plaintiff appears to be asserting a claim of negligence on the part of these Defendants.

This Court initially finds that Defendant Aparatis Distributing Co. (John Doe) is not a person acting under color of state law, and therefore, is not liable to Plaintiff under § 1983. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.) (holding that private parties may be liable under § 1983 only when they have acted under color of state law), *cert. denied*, 516 U.S. 858 (1995). A private entity, such as Aparatis Distributing Co., can be sued under § 1983 only

where (1) it "has exercised powers that are traditionally the exclusive prerogative of the State," *Mark*, 51 F.3d at 1142; (2) the State and the private party act in concert or jointly to deprive a plaintiff of his rights, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170–171 (1970); (3) the State has permitted a private party to substitute his judgment for that of the State, *Cruz v. Donnelly*, 727 F.2d 79, 81–82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620 (1991); *Mark*, 51 F.3d at 1143. *See also Parrish v. Aramark Foods, Inc.*, Civil No. 11-5556 (NLH), 2012 WL 1118672, *4 (D.N.J. Apr. 2, 2012). In this case, Plaintiff fails to make any allegations against this private entity or actor that would give rise to a plausible inference that Defendant Aparatis Distributing Co. (John Doe) acted under color of state law to deny Plaintiff his constitutional rights. Plaintiff alleges no facts that would justify treating this Defendant as a state actor, nor has Plaintiff alleged any facts to show that the presence of defective water dispensers was the result of a policy, practice or custom in the relationship between this Defendant and the ECCF Defendants. Plaintiff simply alleges that this Defendant provided ECCF with defective water dispensers. This bare allegation shows nothing more than Defendant acting as a private company operating as the seller of water dispensers to the ECCF. Therefore, the Complaint is dismissed with prejudice, in its entirety, as against Defendant Aparatis Distributing Co. (John Doe) for failure to state a claim.

As to the remaining state actor Defendants, Ortiz, Faunce, Hendricks, Capt. Christopherson, Sgt. Lynn, Sgt. Crawford and Lt. John Doe, Plaintiff's slip and fall claim sounds in negligence, which is not actionable under § 1983. The Supreme Court has held that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "[M]erely negligent

misconduct will not give rise to a claim under § 1983; the state defendant must act with a higher degree of intent." *Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) (citing Lewis, 523 U.S. at 849). Indeed, the Supreme Court has long held that prison authorities' mere negligence in and of itself does not violate a prisoner's constitutional rights. *See Daniels v. Williams*, 474 U.S. 327, 330–30 (1986). *See also Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 n. 2 (3d Cir. 2001). The United States Constitution is not a "font of tort law." *Lewis*, 523 U.S. at 847 n. 8, 848 (The Constitution does not guarantee due care on the part of government officials.); *Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009). In a due process challenge, the threshold question is whether the behavior of the government officer "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n. 8; *see Daniels*, 474 U.S. at 330 (claim arising out of a fall from pillow left on prison stairs is a claim of negligence, not actionable under the Due Process Clause of the Fourteenth Amendment); *Sanford v. Stiles*, 456 F.3d 298, 305 (3d Cir.2006). *See also Robinson v. Temple Univ. Health Svcs.*, No. 12-2724, 2012 WL 6183603 at *2 (3d Cir. Dec. 12, 2012) (unpubl.) (allegations of negligence do not support a section 1983 claim).

When judged against this higher standard of egregious and conscious shocking conduct, the facts alleged here do not rise to such a level of indifference as to constitute gross negligence. Plaintiff generally alleges that Defendants knew or should have known of the defective water dispensers, but he admits that soon after his accident in March 2013, in April 2013, Defendants removed the dispensers and installed new ones. At best, Plaintiff's threadbare allegations, if true, show simple negligence, not deliberate indifference. Accordingly, the Complaint will be dismissed with prejudice, in its entirety as against these Defendants, except Dr. Annicette, for failure to state a cognizable claim under § 1983.

Plaintiff also cannot proceed with this negligence action against the Defendants based on diversity jurisdiction. To establish diversity jurisdiction under 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010).  In this regard, a plaintiff relying on diversity of citizenship as the asserted basis for federal jurisdiction "'must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant[s] are citizens of different states .'"  *Gay v. Unipack, Inc.*, No. 10–6221, 2011 WL 5025116, at *4 (D.N.J. Oct. 20, 2011) (citation omitted).  Thus, the Court may properly dismiss a complaint for lack of subject matter jurisdiction in the absence of complete diversity—i.e., where the plaintiff and any defendant are citizens of the same state.  *Schneller*, 387 F. App'x at 292 (affirming district court's determination that it lacked diversity jurisdiction where plaintiff and eleven defendants were citizens of the same state).

Here, Plaintiff fails to assert complete diversity among the numerous Defendants. Therefore, the Complaint will be dismissed without prejudice as against all named Defendants, except Dr. Annicette, for failure to assert facts necessary to establish diversity jurisdiction at this time.[1] The dismissal of negligence claims is without prejudice to Plaintiff's right to refile his

---

[1] This dismissal is without prejudice to Plaintiff filing an amended Complaint to cure the deficiencies of his pleading as discussed above, namely, facts necessary to support diversity jurisdiction.  Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  *See West Run Student Housing Associates, LLC v. Huntington National Bank*, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. April 4, 2013)(collecting cases). *See also* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2008).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and

10

negligence claims, if any, in a court of competent jurisdiction, *i.e.*, the Superior Court of New Jersey, if he complies with the New Jersey Tort Claims Act requirements.

B.  Denial of Medical Care Claim

Plaintiff next alleges that Defendant Dr. Annicette has acted with deliberate indifference to Plaintiff's serious medical needs in violation of his Fourteenth Amendment rights, because Dr. Annicette refuses to schedule an MRI that has been recommended by several doctors with respect to treatment of Plaintiff's worsening back injury. To state a Fourteenth Amendment claim of inadequate medical attention, Plaintiff must allege that Dr. Annicette acted with deliberate indifference to Plaintiff's serious medical needs. *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (per curiam) (citing *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)). The standard used to evaluate a Fourteenth Amendment claim for inadequate medical care is similar to that under the Eighth Amendment (though a due process "reasonableness" analysis would not change the result here).

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The Third Circuit has found deliberate

---

explicit. *Id*. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id*.

11

indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Pierce*, supra (quoting *Rouse*, 182 F.3d at 197).

However, deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Pierce*, *supra* (citations omitted). Thus, allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

The Third Circuit has also noted that deliberate indifference can be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir.2003) (quoting *Monmouth Cnty. Inst. Inmates v.. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987))).

In this case, Plaintiff has alleged that Dr. Annicette refuses to provide an MRI as follow-up evaluative care for Plaintiff's continuing and escalating pain and numbness from a diagnosed pinched nerve injury. This MRI procedure was expressly prescribed by two orthopedic specialists. As Plaintiff's allegations, if true, show a diagnosis and prescription for treatment, Plaintiff's allegations are sufficient to show a serious medical need. The allegations also may be

12

sufficient to show deliberate indifference on Defendant's part, as the refusal to schedule the MRI evaluative procedure is plainly in disregard of recommended treatment.  Further, Plaintiff has alleged that the denial of the MRI treatment is based on a non-medical reason, having alleged that Dr. O'Connor told Plaintiff that Defendant Dr. Annicette has refused treatment due to the cost.  Those allegations, if true, are consistent with a claim of deliberate indifference.  Accordingly, this denial of medical care claim will be permitted to proceed against Defendant Dr. Annicette at this time.

C.  Application for Appointment of Counsel

Plaintiff has also requested the appointment of counsel.  Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  *See Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir. 1997).  In determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  *See Tabron v. Grace*, 6 F.3d 147, 155–56, 157 n. 5 (3d Cir. 1993); *see also Cuevas v. United States*, 422 F. App'x 142, 144–45 (3d Cir .2011) (per curiam) (reiterating the *Tabron* factors).

Applying these factors to this case, the Court will deny plaintiff's request for the appointment of counsel at this time.  Plaintiff demonstrates an ability to present his claims in a clear and articulate manner.  In addition, the legal and factual issues of his claim are not complex as Plaintiff's claim involves the discrete issue that he was denied a specific medical procedure due to cost concerns and not a legitimate medical concern.  This Court's denial of appointment

of counsel, however, is without prejudice to Plaintiff making a renewed application should his case advance to the point where extensive discovery and/or expert testimony become necessary. *See Montgomery v. Pinchak*, 294 F.3d 492, 503-05 (3d Cir. 2002).  At the present time, however, the status of Plaintiff's case does not share the same circumstances that warranted appointment of counsel in Plaintiff's prior case, *Montgomery v. Pinchak*, *supra*.

D.  Motion for Emergent Relief

On November 14, 2013, Plaintiff filed a motion for emergent relief.  (ECF No. 7.)  Specifically, the Court construes Plaintiff's motion as one seeking a preliminary injunction to compel Defendant to schedule the prescribed MRI procedure.  Plaintiff alleges that since the filing of his Complaint, on September 28, 2013, he fell due to numbness in his legs and further injured himself.  (ECF No. 7-1.)

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted).  The "well-settled" standard of review in this circuit for a party seeking a preliminary injunction was recently observed in *Starego v. New Jersey State Interscholastic Athletic Ass'n*, —— F. Supp2d ——, 2013 WL 4804821, * 3 (D.N.J. Sept. 9, 2013).  Namely, to secure the extraordinary relief of a preliminary injunction or temporary restraining order, Plaintiff must show: (1) a likelihood of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the non-moving party; and (4) that the public interest favors such relief.  *Id*. (citing *Conestoga Wood Specialties Corp. v. Sec'y of the U.S. Health and Serv.*, 724 F.3d 377, 382 (3d Cir. 2013); *Kos Pharms. Inc. v. Andrx Corp.*,

369 F.3d 700, 708 (3d Cir. 2004). The Third Circuit has further instructed, and freshly reconfirmed, that a plaintiff seeking an injunction must meet all four criteria, as "[a] plaintiffs failure to establish any element in its favor renders a preliminary injunction inappropriate." *Conestoga*, 724 F.3d at 382 (quoting *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) .

Taking these factors into consideration here, the Court first finds that Plaintiff has demonstrated a likelihood of success on the merits because this Court has just determined that Plaintiff's denial of medical care claim should proceed past preliminary screening. Not only has Plaintiff asserted that the MRI procedure was prescribed by two doctors at ECCF, but he also asserts that Defendant's decision to deny the procedure has no medical justification.

However, irreparable harm is a more difficult hurdle to overcome. Indeed, courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific medical courses of treatment for prisoners, and have typically declined such requests citing the inmate's failure to demonstrate irreparable harm. *See Rivera v. Pennsylvania Dep't. Of Corrections*, 346 F. App'x 749 (3d Cir. 2009); *Rush v. Correctional Medical Services, Inc.*, 287 F. App'x 142 (3d Cir. 2008). For instance, to demonstrate irreparable harm, a plaintiff must point to an imminent risk of irreparable injury that "cannot be redressed by a legal or an equitable remedy following trial." *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 485 F. App'x 559, 563 (3d Cir. 2012) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir.1989)). *See also Chester ex rel. N.L.R.B. v. Grane Healthcare Co.*, 666 F.3d 87, 89 (3d Cir. 2011) (describing irreparable harm factor as "imminent threat of irreparable

harm"). In other words, more than a risk of irreparable harm must be shown, rather, Plaintiff must make a clear showing of immediate irreparable injury.

In this case, Plaintiff alleges that he continues to suffer harm due to his pinched nerve injury, having recently experienced another fall due to the injury that has further exacerbated his condition. Moreover, given his HIV status, Plaintiff insists that another fall could prove dangerous to him and others. These allegations are not merely speculative, rather they tend to strongly demonstrate imminence and irreparable harm.

This Court must also consider the harm to the Defendant and whether granting the preliminary injunction will be in the public interest. *New Jersey Retail Merchants Ass'n v. Sidamon–Eristoff*, 669 F.3d 374, 388 (3d Cir. 2012). "Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution." *Abraham v. Danberg*, 322 Fed. App'x 169, 170 (3d Cir. 2009) (citation omitted). Consequently, these last two factors do not necessarily militate in Plaintiff's favor because the impact of granting injunctive relief in this case, *i.e.*, directing that Defendant provides Plaintiff with an MRI, would effectively have this Court making an *ad hoc*, and individual decision concerning the treatment of a single prisoner, which could possibly harm both the Defendant's and the public's interest. Explained another way, in the prison context, Defendant's interests and the public's interest in penological order could be adversely affected if the Court began dictating specific treatment for Plaintiff, "one inmate out of thousands in the state prison system." *Hammonds v. Collins*, Civil No. 3:12-cv-00236, 2013 WL 3525672, *8 (M.D. Pa. Jul. 11, 2013). Thus, considerations of the harm to the Defendant's and the public's interest may weigh against Plaintiff.

16

Consequently, because there is some tension between the first two factors weighing more heavily in Plaintiff's favor and the last two factors supporting Defendant to some degree, this Court will issue an Order to Show Cause directing Defendant Dr. Annicette to show cause in writing, no later than April 15, 2014, as to why Plaintiff's request for injunctive relief should not be granted.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's § 1983 claim against all named Defendants, except Defendant Dr. Annicette, which sounds in negligence, is dismissed with prejudice, in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1), for failure to state a claim. Likewise, the Complaint is dismissed with prejudice as against Defendant Aparatis Distributing Co. (John Doe), for failure to state a claim, because Defendant is not a state actor subject to liability under 42 U.S.C. § 1983. Plaintiff's negligence claim against all named Defendants, except Dr. Annicette, is dismissed without prejudice, for failure to state a claim at this time because Plaintiff has not alleged facts to support diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff's remaining claim asserting denial of medical care in violation of the Fourteenth Amendment will be allowed to proceed at this time against Defendant Dr. Annicette. In addition, Plaintiff's request for appointment of counsel is denied without prejudice at this time. Finally, with respect to Plaintiff's motion for emergency relief, this Court will issue an

Order to Show Cause directing Defendant to file a response in writing as to why Plaintiff's emergency relief should not be granted.  An appropriate order follows.


                                                                s/SUSAN D. WIGENTON
                                                                United States District Judge

Dated:  April 1, 2014