NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD JEFFREY MONTGOMERY, | : | |
| | : | Civil Action No. 13-5382(SDW) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| APARATIS DIST. COMPANY, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

    EDWARD JEFFREY MONTGOMERY, Plaintiff pro se
    #455483 SBI# 599269-A
    Essex County Correctional Facility
    354 Doremus Avenue
    Newark, New Jersey 07105

**WIGENTON**, District Judge

    This matter is before the Court on Plaintiff Edward Jeffrey Montgomery's motion for emergent relief seeking Defendant Dr. Lionel Anicette to provide Plaintiff an allegedly prescribed MRI procedure. (ECF No. 7.) On April 1, 2014, this Court issued an Order to Show Cause directing Dr. Anicette to respond in writing to the Court as to whether Plaintiff's motion for emergency relief should be granted. (ECF Nos. 10, 11.) Defendant filed a response on May 2, 2014. (ECF No. 20.) Plaintiff thereafter filed several letter replies in support of his motion. (ECF Nos. 21, 23.) This matter is decided on the papers, without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court finds that a

preliminary injunction is not warranted and that the Complaint should be dismissed with prejudice for failure to state a cognizable claim for relief.

## I. BACKGROUND

Plaintiff, Edward Jeffrey Montgomery ("Plaintiff"), filed this lawsuit pursuant to 42 U.S.C. § 1983, against numerous Defendants regarding a slip and fall incident at the Essex County Correctional Facility ("ECCF"), occurring in 2013 when Plaintiff was confined there as a pretrial detainee. (ECF No. 1, Complaint.) In an Opinion and Order issued on April 1, 2014, this Court dismissed all claims asserted against all named Defendants for failure to state a claim, with the exception of Plaintiff's § 1983 denial of medical care claim and related medical negligence claim against the sole remaining Defendant, Dr. Anicette. (ECF Nos. 10, 11.)

Specifically, Plaintiff alleges that Defendant Dr. Anicette denied him medical treatment in violation of his Fourteenth Amendment right to due process by refusing to refer Plaintiff for a follow-up MRI procedure recommended by orthopedic specialists. (ECF No. 1, Compl. at ¶¶10-12.) Plaintiff attached to his Complaint numerous medical slips and letters he wrote and received regarding his pinched nerve injury and requests for the recommended MRI procedure. (*Id.*, Exhibits 1 through 17-Q.) In particular, Plaintiff alleges that he was referred by Dr. O'Connor, a licensed orthopedic specialist associated with CFG Health System, LLC (a private medical company contracted by ECCF to provide medical care for inmates), for an MRI and bone scan during June 2013. (*Id.*, Ex. 17-P at ¶¶ 20-22.) On July 20, 2013, Plaintiff was examined by Dr. Melendez pursuant to a sick call request for continuing pain from his pinched nerve, and Dr. Melendez increased Plaintiff's pain medication . On August 9, 2013, Dr. Kaiser also examined Plaintiff and allegedly informed Plaintiff that his pinched nerve was worse. Plaintiff alleges that

2

Dr. Kaiser also told him that Dr. Anicette was delaying the recommended MRI due to the "financial cost of the procedure." (Id., Ex. 17-P at ¶¶ 24-25.)

After filing his initial Complaint, Plaintiff filed a motion for emergency relief under Fed.R.Civ.P. 65.1, on November 14, 2013. (ECF No. 7.) In his supporting Certification, Plaintiff alleges that on September 28, 2013, he experienced substantial numbness down his legs upon exiting his cell that caused Plaintiff to fall and injure himself. Plaintiff was taken to the East Orange General Hospital where he received emergency medical treatment for the injuries he sustained in his September 28, 2013 fall. Namely, Plaintiff's right wrist was broken and placed in a cast, and Plaintiff received stitches to close a large cut over his right eye. On September 30, 2013, Dr. O'Connor examined Plaintiff at ECCF. Plaintiff alleges that Dr. O'Connor informed Plaintiff that Plaintiff would continue to have complications from his pinched nerve injury. Plaintiff further alleges that Dr. O'Connor again recommended that an MRI be scheduled as follow-up treatment. (ECF No. 7-1, Certification at ¶¶ 7, 8, 10, 11.)

Plaintiff reiterates that he has been "extensively examined by two (2) outside orthopedic specialist's [sic], including the jail's own medical doctors," who have referred Plaintiff for MRI evaluations. (*Id*. at ¶ 13.) Plaintiff alleges that he is HIV positive and poses a threat to himself and others should he suffer another fall resulting in excessive bleeding. (*Id*.) Plaintiff further alleges that, on September 30, 2013, Dr. O'Connor told Plaintiff that Defendant Dr. Anicette "has refused to spend the approximately '$ 1000.00' to pay for such a procedure, and that plaintiff will have to waite [sic] until either he makes bail" or becomes a convicted State prisoner. (*Id*. at ¶ 15.)

Plaintiff alleges that he filed administrative grievances regarding the refusal to schedule a recommended MRI. He also has filed his administrative grievances with ECCF's ombudsman.

(*Id*., ¶¶ 17, 18.)  In his motion, Plaintiff argues that he faces imminent danger of further injury if he does not receive the recommended MRI.  (*Id*. at ¶ 21.)

On April 1, 2014, this Court issued an Opinion and Order that dismissed most claims and Defendants from this action, but allowed Plaintiff's claims against Dr. Anicette to proceed.  In addition, with regard to the motion for emergency relief, this Court directed Dr. Anicette to respond in writing on the issue of Plaintiff's request for injunctive relief.  (ECF Nos. 10, 11.)

On May 2, 2014, Dr. Anicette answered this Court's April 1, 2014 Order, by providing Plaintiff's relevant medical records in response to Plaintiff's motion for emergency relief.  (ECF No. 20, Defendant's Brief.)  At the outset, Dr. Anicette argued that injunctive relief was no longer needed because Plaintiff had undergone an MRI on April 3, 2014.  (Id., Def.'s Brief at 1.)

Dr. Anicette also provided a detailed summary of Plaintiff's medical history regarding his complaints concerning the lower back injury he incurred from a slip and fall accident on or about April 1, 2013.  This summary is documented by the medical records attached to Dr. Anicette's brief in opposition to Plaintiff's motion for emergency relief.[1]  (ECF Nos. 20-4, 20-5, Defendant's Exhibit C.)  On April 1, 2013, Plaintiff was examined by Dr. Saladin Abdu Nafi for complaints of lumbosacral pain Plaintiff incurred from his slip and fall accident.  The physical exam showed mild tenderness of the lumbosacral spine with Plaintiff's lower extremities exhibiting normal range of motion and strength.  Plaintiff was assessed with lumbago post slip and fall, and he was prescribed Naprosyn and Robaxin for 5 days.  Plaintiff also was referred for an orthopedic consult.  (ECF No. 20-4, Ex. C – ECCF/Montgomery Bates ## 129 – 130.)

---

[1] Dr. Anicette explains that Plaintiff has multiple medical issues, which are unrelated to his lower back.  Accordingly, for ease of reference, those voluminous documents related to Plaintiff's other medical care and treatment were not provided to the Court for this review.  (ECF No. 20, Def.'s Brief at 2, fn.2.)

4

Several days later, on April 5, 2013, Plaintiff was seen by orthopedic surgeon Dr. Paul O'Connor, who noted that Plaintiff had no radicular symptoms but was restricted in his range of motion with respect to his lower back.  Dr. O'Connor also reported that Plaintiff's neurological exam was within normal limits and assessed Plaintiff's injury to be a lumbosacral strain.  (*Id*. at ## 131-133.)  No MRI was recommended at that time.

On May 15, 2013, Plaintiff was seen by orthopedic surgeon Dr. Anthony Kaiser for complaints of low back pain radiating to his left lower extremity.  On physical exam, Dr. Kaiser noted point tenderness in the lumbar spine and the assessment was of sciatica.  (*Id*. at ## 237-238.)  No MRI was recommended.  Plaintiff was seen again by orthopedic surgeon Dr. O'Connor on May 24, 2013, who noted complaints of pain for 3 weeks and radicular pain to the left lower extremity.  Examination disclosed restricted range of motion of the lower back and weakness of the left lower extremity.   Dr. O'Connor prescribed Robaxin for 10 days.  (*Id*. at ## 249-250.)  That same date, Dr. Grace Melendez also noted Plaintiff's complaint of lower back pain with radiation and intermittent numbness and the plan for Robaxin and a non-steroidal anti-inflammatory ("nsaid").  (*Id*. at # 252.)  No MRI was recommended.

On May 26, 2013, Dr. Melendez noted Plaintiff's complaint of lower back pain, his evaluation by the orthopedist and his medication orders.  Dr. Melendez also noted that Plaintiff was walking around in no distress.  (*Id*. at # 259.)  On June 1, 2013, Dr. John Godinsky examined Plaintiff, noting that Plaintiff's gait and station were normal.  However, Dr. Godinsky also noted that Plaintiff said the Naprosyn and/or Motrin were not working, so Plaintiff was referred back to orthopedics.  (*Id*. at ## 267-268.)

On June 8, 2013, Plaintiff again was seen by Dr. Melendez, who noted complaints of lower back pain with radiation and numbness, and a limp, but no motor deficits.  Plaintiff was

5

prescribed Neurontin 300 mg twice per day for 90 days and referred to orthopedics. (*Id*. at ## 269-271.)  Dr. O'Connor examined Plaintiff on June 17, 2013, noting that Plaintiff's lumbar spine was within normal limits.  However, Dr. O'Connor did recommend an x-ray to be performed. (*Id*. at # 272-273.)

On June 24, 2013, Plaintiff was examined by Nurse Practitioner Ojelade based on his complaints that the pain medications were not working.  Plaintiff was observed to have a steady gait with a normal range of motion and strength in his lower extremities.  The Neurontin was increased to 600 mg twice a day, and Plaintiff was evaluated for a cane. (*Id*. at ## 274-276.)  Dr. O'Connor examined Plaintiff two days later, on June 26, 2013, for Plaintiff's continuing complaints of lower back pain with a chief complaint of pain in the left buttocks and radicular pain into the left lower extremity.  Dr. O'Connor noted that Plaintiff's x-ray of his lumbar spine and hips showed no abnormalities.  Nevertheless, as a result of the persistent pain in the left hip region, Dr. O'Connor recommended a bone scan. (*Id*. at ## 278-279, 447.)  The medical records also show that Plaintiff was seen by APN Natalia Watkins on June 26, 2013, who noted that Plaintiff was pleased with his care. (*Id*. at # 281.)

On July 20, 2013, Dr. Melendez examined Plaintiff who complained that the Neurontin did not relieve the pain and numbness in his left hip and leg.  Plaintiff showed a normal gait with a normal range of motion and strength in his lower extremities.  Dr. Melendez noted Dr. O'Connor's recommendation for a bone scan, and she prescribed Naprosyn 500 mg twice per as need for 30 days. (*Id*. at ## 285-286.)

On July 22, 2013, Dr. O'Connor examined Plaintiff and noted a plan to "await bone scan.  Consider MRI." (*Id*. at ## 287-288.)  However, Dr. O'Connor did not submit a request for an MRI at that time.

On August 5, 2013, Plaintiff told RN Jonathan Boston that he had been requesting an MRI since March 2013. Plaintiff was referred to orthopedics. (*Id*. at # 290.) On August 9, 2013, orthopedic surgeon, Dr. Kaiser, examined Plaintiff as a follow-up to Plaintiff's complaints of progressive left lumbar radiculopathy with tingling in his toes. The medical record shows an assessment comment to "resubmit request for MRI," with a plan to prescribe Ultram 50 mg at bedtime. (*Id*. at # 291.) No request for an MRI had been submitted prior to August 9, 2013, and Dr. Kaiser did not submit a request for an MRI at that time.

Dr. O'Connor again examined Plaintiff on September 9, 2013. He found Plaintiff's lumbar spine and neurological examinations to be within normal limits, so Dr. O'Connor continued Plaintiff's Ultram (tramadol) prescription for 7 days. (*Id*. at ## 298, 299.) Dr. O'Connor did not request an MRI at that time.

On September 28, 2013, Plaintiff reported to Dr. Melendez that he had fallen while working in his pod. Plaintiff complained of forearm pain and a cut above the right eye. Dr. Melendez observed Plaintiff's gait and station were normal as were the range of motion and strength in his lower extremities. (ECF No. 20-5, Ex. C – ECCF/ Montgomery ## 305, 306.) On September 30 and October 2, 2013, Dr. O'Connor treated Plaintiff for his right forearm pain with no notations of complaints concerning Plaintiff's lower back. (*Id*. at ## 308, 309.) No MRI was requested.

On October 9, 2013, Nurse Practitioner Ojelade examined Plaintiff who had reported that his "nerve pain" was not getting better and requested an increase in dosage of Neurontin. (*Id*. at # 312.) Thereafter, on October 18 and 30, 2013, Dr. O'Connor examined Plaintiff for his forearm injury, and by Dr. Kaiser on October 25, 2013. No notation of complaints were made by Plaintiff about his lower back at those times. (*Id*. at ## 315-319.) No MRI was requested.

Then, on November 6, 2013, Plaintiff submitted a sick call request concerning his lower back, and was seen by RN Anita Yhap, who referred Plaintiff to a practitioner. (*Id*. at ## 320-321.)  On November 15, 2013, Dr. Kaiser examined Plaintiff with no notation of complaints about his lower back.  (Id. at ## 321-322.)   Again, no MRI was requested.

On December 9, 2013, Dr. O'Connor saw Plaintiff for treatment of his right wrist with no notation of complaints about his lower back.  (Id. at ## 323-324.)  No MRI was requested for Plaintiff's back.  On December 18, 2013, Dr. O'Connor again saw Plaintiff who complained of persistent pain with left sided radiculopathy.  Dr. O'Connor discussed the case with Defendant Dr. Anicette.  Dr. Anicette recommended that an MRI be performed and approved an MRI on the spot.  The MRI approval was for routine performance of the study and it was not considered to be emergently necessary.  (*See* ECF No. 20-6, Certification of Dr. Lionel Anicette ("Anicette Cert.") at ¶¶ 6-8; *see also* ECF No. 20-5, Ex. C at ## 329-330.)[2]

On December 20, 2013, Nurse Practitioner Ojelade increased Plaintiff's Neurontin to 600 mg three times per day.  (*Id*. at # 331.)  On January 31, 2014, PA Pierre Provillon ordered Neurontin 300 mg three times per day for 90 days.  (*Id*. at # 335.)

On February 5, 2014, Dr. O'Connor examined Plaintiff for his continued complaints of leg pain and weakness.  Dr. O'Connor noted that an MRI had been approved.  (*Id*. at # 338.) Plaintiff was seen again by orthopedic surgeon Dr. O'Connor on March 5, 2014, who noted continued complaints of leg pain and the pending MRI.  (*Id*. at # 342.)

On March 27, 2014, a note is entered that Plaintiff was scheduled for an MRI on April 3, 2014.  (*Id*. at # 353.)  On March 31, 2014, Plaintiff's annual screening was performed by Nurse

---

[2] This Court notes that Bates # 330 was not appended to the medical records provided under Ex. C.

Practitioner Ojelade.  Ojelade noted that Plaintiff had a steady gait with normal range of motion and strength in the lower extremities.  Ojelade's plan was for Neurontin 600 mg twice per day for 90 days.  (*Id*. at ## 353-357.)

Plaintiff had his MRI on April 3, 2014.  (*Id*. at #  357.)  He was released from jail the following day.  (*Id*. at # 360.)

On April 11, 2014, Nurse Practitioner Ojelade noted the impression of the MRI conducted on April 3, 2014, which showed levoscoliosis and mild lumbar spondylosis.  (*Id*. at ## 361, 546.)

## II.  DISCUSSION

Plaintiff's Complaint against Defendant Dr. Anicette alleges that Dr. Anicette acted with deliberate indifference to Plaintiff's serious medical needs in violation of his Fourteenth Amendment rights, because Dr. Anicette refused to schedule an MRI that has been recommended by several doctors with respect to treatment of Plaintiff's worsening back injury.  His motion for emergency or injunctive relief specifically seeks to have the MRI scheduled promptly.

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances."  *Novartis Consumer Health v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted).  The "well-settled" standard of review in this circuit for a party seeking a preliminary injunction was recently observed in *Starego v. New Jersey State Interscholastic Athletic Ass'n*, 970 F. Supp.2d 303, 307 (D.N.J. 2013).  Namely, to secure the extraordinary relief of a preliminary injunction or temporary restraining order, Plaintiff must show: (1) a likelihood of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief

will not result in even greater harm to the non-moving party; and (4) that the public interest favors such relief. *Id.* (citing *Conestoga Wood Specialties Corp. v. Sec'y of the U.S. Health and Serv.*, 724 F.3d 377, 382 (3d Cir. 2013); *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The Third Circuit has further instructed, and freshly reconfirmed, that a plaintiff seeking an injunction must meet all four criteria, as "[a] plaintiffs failure to establish any element in its favor renders a preliminary injunction inappropriate." *Conestoga*, 724 F.3d at 382 (quoting *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

Plaintiff had his MRI performed on April 3, 2014, which showed levoscoliosis and mild lumbar spondylosis. Consequently, because Plaintiff received the treatment or MRI he sought in his motion for emergency relief, this Court denies the motion with prejudice as moot.

This Court also finds that Plaintiff fails to state a cognizable claim for relief against Dr. Anicette with regard to the sole remaining claim of denial/delay of medical care.

To state a Fourteenth Amendment claim[3] of inadequate medical attention, Plaintiff must allege that Dr. Anicette acted with deliberate indifference to Plaintiff's serious medical needs. *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (per curiam) (citing *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)). The standard used to evaluate a Fourteenth Amendment claim for inadequate medical care is similar to that under the Eighth Amendment (though a due process "reasonableness" analysis would not change the result here).

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that

---

[3] Plaintiff was a pretrial detainee at the time of the events in this action, thus, his claim is examined under the Fourteenth Amendment as opposed to the Eighth Amendment, which applies to convicted prisoners. *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Pierce*, supra (quoting *Rouse*, 182 F.3d at 197).

However, deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Pierce*, *supra* (citations omitted).  Thus, allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

The Third Circuit has also noted that deliberate indifference can be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted).  "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir.2003) (quoting *Monmouth Cnty. Inst. Inmates v.. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987))).

In this case, Plaintiff has alleged that Dr. Anicette refused to provide an MRI as follow-up evaluative care for Plaintiff's continuing and escalating pain and numbness from a diagnosed pinched nerve injury. Plaintiff further alleges that the MRI procedure was expressly prescribed by two orthopedic specialists. However, as Plaintiff's ECCF medical records plainly show, Plaintiff was treated for his lower back injury and complaints of pain in a prompt and continual manner.

Plaintiff suffers from many medical issues, including HIV status, and his medical records depict immediate attention received for all of his medical complaints. For a one year period from April 1, 2013 through April 3, 2014, Plaintiff was seen by medical staff and orthopedic specialists routinely, several times each month. The medical notations reflect that Plaintiff was treated with pain medication that was adjusted as needed per Plaintiff's complaints of pain. The notations also show that Plaintiff was able to walk and had normal range of motion and strength in his lower extremities. While there were two entries that mentioned an MRI, it is plain that it was under consideration, not that an MRI had been recommended, as Plaintiff alleges.

Further, after Dr. Anicette was consulted, it was agreed that an MRI would be performed but it was not determined that the MRI was required on an emergent basis. Thus, the medical records in this case reveal only a disagreement regarding the medical treatment plan that Plaintiff was receiving during the past year. Plaintiff's disagreement and dissatisfaction with his doctors' care and their decision not to order an MRI are insufficient to state a deprivation /denial of medical care claim in this instance. *See Lenhart*, 528 F. App'x at 115 (stating that complaint that alleges physician was negligent in diagnosing and treating a medical condition does not state a valid claim of medical mistreatment and that mere disagreement as to proper medical treatment does not support a claim of inadequate medical care) (citations omitted). At best, Plaintiff's

allegations allege medical malpractice or medical negligence, which also are insufficient to state a § 1983 denial of medical care claim. *See Steedley v. McBride*, 446 F. App'x 424, 425-26 (3d Cir. 2011) (per curiam). In this case, Plaintiff is hard-pressed to show even medical negligence as the MRI did not reveal any significant injury that would have required different or sooner treatment than that which was provided to Plaintiff by his doctors.

Therefore, because Plaintiff cannot show deliberate indifference, his § 1983 denial of medical care claim fails to state a cognizable claim of a constitutional deprivation. Accordingly, the Complaint is dismissed with prejudice, in its entirety, as against Dr. Anicette.[4]

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for emergency relief (ECF No. 7) is denied as moot. Further, the Complaint is dismissed with prejudice, in its entirety, as against Dr. Anicette, pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1), for failure to state a cognizable claim of a constitutional deprivation under 42 U.S.C. § 1983. Because Dr. Anicette is the only remaining Defendant in this case, the Court will direct the Clerk of the Court to close this case accordingly. An appropriate order follows.

                                               *s/ Susan D. Wigenton*
                                               SUSAN D. WIGENTON
                                               United States District Judge

Dated: June 16, 2014

---

[4] The Court notes that Plaintiff alleges Dr. Anicette refused to provide the MRI for non-medical reasons, namely, based on the cost of the procedure and the fact that Plaintiff would be transferred to a state correctional prison upon sentencing. He provides no support for this allegation. Moreover, the medical records and Dr. Anicette's Declaration dispute Plaintiff's allegation. Indeed, Plaintiff's medical records show that his MRI eventually was approved and performed before he was transferred from ECCF custody, and that the reason for the delay was based on medical diagnoses of lumbosacral strain, which did not indicate a need for an MRI until it appeared that Plaintiff's complaints of pain persisted after recommended treatment by pain medication did not alleviate Plaintiff's condition.